The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Theresa B. Stephenson, and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award.
************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties subsequent to and at the hearing on 12 August 1996, and in a Pre-Trial Agreement dated 12 August 1996, as:
STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to the provisions of the North Carolina Workers' Compensation Act.
2. On 13 February 1992 an employment relationship existed between plaintiff-employee and defendant-employer.
3. On 13 February 1992 plaintiff suffered a compensable injury to his back.
4. The plaintiff's average weekly wage on 13 February 1992 was $593.33 per week, yielding a compensation rate of $395.57 per week.
5. Employers Insurance of Wausau is the carrier at risk in this case.
6. Plaintiff's medical records from Dr. Richard Dobson are admitted as Stipulated Exhibit #1.
7. Plaintiff's medical records from Cape Fear Memorial Hospital are admitted as Stipulated Exhibit #2.
8. Plaintiff's medical records from Dr. Richard Campbell are admitted into evidence as Stipulated Exhibit #3.
9. Plaintiff's medical records from Carolina Spine Institute are admitted into evidence as Stipulated Exhibit #4.
10. Plaintiff's medical records from Southeastern Orthopaedic Clinic are admitted into evidence as Stipulated Exhibit #5.
11. Plaintiff's job description from defendant-employer is admitted into evidence as Stipulated Exhibit #6.
12. Documents from Cigna Insurance Company are admitted into evidence as Stipulated Exhibit #7.
13. Documents from Prudential Insurance are admitted into evidence as Stipulated Exhibit #8.
14. All Industrial Commission Forms which are a part of this file are hereby made a part of the record. These include a Form 21 Agreement, approved by the Commission on 20 August 1992, and a Form 26 Agreement, approved on 16 February 1995, and pursuant to which plaintiff was paid compensation for thirty (30) weeks for the ten percent (10%) permanent partial disability to his back.
15. Seven pages of documentation reflecting compensation paid plaintiff are stipulated into evidence.
16. It is further stipulated the plaintiff was paid temporary total compensation from 31 July 1992 through 7 October 1992; plaintiff was paid temporary partial disability from 10 January 1995 through 21 April 1995.
17. Plaintiff received short term disability benefits of $303.60 per week from 10 May 1995 through 10 November 1995 pursuant to disability plan funded by the defendant-employer.
18. Prior to the hearing, but after plaintiff filed his Form 33 Request for Hearing, defendant-employer voluntarily corrected the mistake in computation of plaintiff's average weekly wage. Defendant-employer paid plaintiff $1,253.25 in total adjustment to plaintiff's average weekly wage. Counsel for plaintiff requests an attorney fee for the services necessary for the recovery of this amount.
19. The issues to be determined by this hearing are whether plaintiff is entitled to a change of physician due to his move to New York; what benefits, if any, are due plaintiff; and whether defendant is entitled to a credit pursuant to N.C. Gen. Stat. § 97-42.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 63 year old male formerly employed by defendant-employer as a tool maker and machinist. Plaintiff's job duties included boring holes in various sized metal parts and making metal parts and tools.
2. On 13 February 1992 plaintiff suffered a compensable injury to his back when a block of wood he was standing on rolled out from under him, causing him to fall and strike the lower portion of his back against a table.
3. Dr. John Cromer, an occupational medicine specialist, treated plaintiff conservatively and plaintiff returned to full duty within two (2) weeks. Plaintiff began having increased pain in March, 1992 and he began physical therapy in April, 1992.
4. Dr. Cromer referred plaintiff to Dr. Murray Seidel, an orthopaedic surgeon. A 31 July 1992 MRI revealed multi-level disc herniations and bulges as well as degenerative arthritic changes. Dr. Seidel excused plaintiff from work and treated plaintiff with physical therapy and anti-inflammatories. Dr. Seidel rated plaintiff with a ten percent (10%) permanent partial disability to his back on 25 March 1993.
5. As a result of his compensable back injury plaintiff was unable to work from 31 July 1992 through 7 October 1992. Plaintiff received temporary total disability compensation for this period.
6. Plaintiff returned to work for defendant-employer 8 October 1992 in a modified duty position. This modified duty consisted of work in the tool room of defendant-employer. This tool room is a type of machine shop where specialized parts are constructed for machines. This was a regular position at defendant-employer and required a highly skilled employee. The work in this tool room was more relaxed and allowed plaintiff to sit or even lie down as needed for his back. The plaintiff returned to an eight hour day earning the same or greater wages than he had earned prior to his compensable injury on 13 February 1992.
7. Plaintiff continued to experience pain and sought chiropractic treatment which gave some relief until December, 1994. When plaintiff's complaints of pain increased on 4 January 1995 plaintiff sought treatment from Dr. Cromer complaining of increasing back pain in his low back radiating to the buttocks, anterior thighs and groin area. The plaintiff was unable to get comfortable in any position; his current anti-inflammatory medicine was not alleviating pain. Dr. Cromer removed plaintiff from work on that date.
8. On 9 January 1995 plaintiff returned to work but for only four hours per day in order to allow to phase into an eight hour day without exacerbating his symptoms.
9. Dr. Cromer also referred plaintiff to Dr. Johnson, an orthopaedic surgeon in Charleston, South Carolina. Dr. Johnson diagnosed plaintiff with lumbar spondylosis, chronic low back pain and bilateral buttock pain. A 16 February 1995 MRI continued to show spondylitic changes from L2 through S1, but the disc herniations had resolved themselves. Dr. Johnson suggested medications, limited work activities and exercises. Dr. Johnson gave the plaintiff a ten percent (10%) permanent partial disability rating to his back and felt the plaintiff reached maximum medical improvement by 20 March 1995.
10. Plaintiff received temporary partial disability compensation 10 January 1995 through 21 April 1995. On 21 April 1995, Dr. Cromer returned plaintiff to work eight hours per day. At that time it was Dr. Cromer's intention to see how plaintiff responded to the increased work hours.
11. Plaintiff was able to work the full eight hour shift for only two days. For the remainder of his employment with defendant-employer, approximately two weeks until 9 May 1995, plaintiff was only able to work part-time due to the pain.
12. Despite defendant-employer's great need for an experienced machinist in the tool room, and problems finding qualified individuals to fill these responsibilities, the defendant-employer informed plaintiff on or about 9 May 1995 they would no longer be able to accommodate him part-time if he could not work full-time.
13. In May, 1995, plaintiff attempted to work but was unable to due to pain as a result of his compensable injury. The defendant-employer terminated plaintiff's employment but did not resume payment of temporary total disability compensation. Defendant-employer failed to receive permission from the Commission to stop payment of compensation to plaintiff.
14. Dr. Cromer removed plaintiff from work 9 May 1995. Plaintiff received short term disability from 10 May 1995 through 10 November 1995 in the amount of $303.60 per week from an employer-funded plan.
15. Plaintiff sought treatment from Dr. Richard Dobson in New York on 26 June 1995 when he visited his daughter. Plaintiff had previously lived in New York prior to coming to Wilmington in 1984.
16. After June, 1995, plaintiff returned to North Carolina and Dr. Cromer continued to treat his back condition. Sometime during 1996 the plaintiff decided to move back to New York in order to be closer to other family members. Plaintiff's last visit to Dr. Cromer prior to moving was 25 March 1996.
17. Once in New York plaintiff continued to see Dr. Dobson. Dr. Dobson recommended trigger point injections supplemented by physical therapy and/or chiropractic care. Dr. Dobson did not rule out surgery for the future.
18. As a result of plaintiff's compensable injury, he has been unable to work or earn wages in any capacity since 9 May 1995.
19. The plaintiff suffered from degenerative stenosis prior to his compensable injury on 13 February 1992; however, this stenosis had not prevented the plaintiff from working all his life. The compensable injury on 13 February 1992 substantially increased plaintiff's spinal deterioration and caused a severe segmental instability at the L4-5 level as a result of the injuries to his discs and the surrounding tissues on 13 February 1992.
20. As a result of the plaintiff's compensable injury in February, 1992, plaintiff's degenerative disc disease has progressed from not initially effecting his ability to work prior to 13 February 1992, to causing him to be incapable of earning wages in any employment subsequent to 9 May 1995.
21. Plaintiff is still in need of medical care as a result of his compensable injury. Upon his move to New York, plaintiff applied to defendant-employer to change his treating physician to Dr. Dobson within a reasonable time. When the defendant-employer refused, plaintiff sought treatment on his own due to his severe pain. This treatment was a reasonable attempt to gain relief from pain and attempt to shorten his period of disability.
22. Prior to the hearing, defendant-employer compensated plaintiff in the amount of $1,253.25 for benefits underpaid due to an error in the computation of the average weekly wage.
23. Plaintiff's average weekly wage of $593.33 per week results in a compensation rate of $395.57 per week.
24. It was reasonable to conduct a hearing in this matter.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer on 13 February 1992. N.C. Gen. Stat. § 97-2(6).
2. As a result of this compensable injury plaintiff is entitled to temporary total disability benefits at his compensation rate of $395.57 per week from 9 May 1995 and continuing for so long as he remains disabled. Defendants are entitled to a credit for those amounts paid plaintiff for short term disability from 10 May 1995 through 10 November 1995. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-42.
3. Due to the fact that defendants terminated compensation benefits without authorization of the Industrial Commission, plaintiff is entitled to be paid by defendants a ten percent (10%) penalty on all accrued compensation from 9 May 1995 to the date on which this Opinion and Award is filed. N.C. Gen. Stat. § 97-18(g).
4. As a result of plaintiff's 13 February 1992 injury by accident, plaintiff sustained a ten percent (10%) permanent partial disability to his back entitling him to thirty (30) weeks of compensation. However, because plaintiff has sustained total disability for a period of time greater than thirty (30) weeks since receiving his rating on 20 November 1992 and on 20 March 1995, it is reasonable to infer that plaintiff would elect a more favorable remedy of continuing temporary total disability, and, consequently, is entitled to no compensation for permanent partial disability. N.C. Gen. Stat. § 97-31(23); Whitley v. ColumbiaLumber Manufacturing Corporation, 318 N.C. 89, 348 S.E.2d 336
(1986).
5. Plaintiff is entitled to have defendants provide all medical treatment arising from his 13 February 1992 injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. This includes treatment by Dr. Richard Dobson in New York and Dr. Dobson is approved as plaintiff's treating physician. Hyler v. GTE Products Company,333 N.C. 258, 425 S.E.2d 698 (1993); N.C. Gen. Stat. § 97-25.
6. Counsel for plaintiff has requested, and is entitled to, reasonable attorney fees earned in the recovery prior to the hearing, of $1,253.25 underpayment of temporary total disability.
7. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at a rate of $395.57 per week from 9 May 1995 and continuing thereafter at the same rate for so long as plaintiff remains disabled. Defendants shall receive a credit for short term disability benefits received by plaintiff from the defendant-employer's funded disability plan. Amounts which have accrued shall be paid to plaintiff in a lump sum; and all amounts under this Paragraph shall be subject to an attorney's fee herein approved in Paragraph 3.
2. Due to defendants unauthorized termination of payments, defendants shall pay to plaintiff a ten percent (10%) penalty on all benefits having accrued since 9 May 1995 through the date of this Opinion and Award, subject to an attorney's fee herein approved in Paragraph 3.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sums due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Consideration and designation of this attorney fee contemplates that counsel for the plaintiff shall continue and is ORDERED to monitor the submission of medical expenses to defendants.
4. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the 13 February 1992 compensable injury. This includes treatment by Dr. Richard Dobson in New York, who is approved as plaintiff's treating physician.
5. If not previously paid, defendants shall pay $313.31 in attorney fees to counsel for plaintiff for recovery of the underpayment in temporary total disability.
6 Defendants shall pay the costs, including an expert witness fee of $675.00 to Dr. John Cromer.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER